IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Markies Terrill Collins, | ) | C/A No. 0:15-2437-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Lt. McGhee; Sgt. Johnson; Ofc. Robinson; | ) | **REPORT AND RECOMMENDATION** |
| Ofc. Simmons; Ofc. Lease; Sgt. Lyde; Ofc. | ) | |
| Hunter; Sgt. Turbide; Capt. Thompson; Lt. | ) | |
| Forde; Lt. Williams; Capt. Sheppard; Major | ) | |
| Nettles, *South Carolina Department of* | ) | |
| *Corrections*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Markies Terrill Collins, a self-represented state prisoner, filed this action against the named defendants pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 43.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Collins of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 44.) Collins did not file a any opposition to the defendants' motion. Having reviewed the record presented in support of the defendants' motion, see Local Civil Rule 7.06 (D.S.C.), and the applicable law, the court finds that the defendants' motion should be granted.

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to Collins, to the extent they find support in the record. Collins alleges that, on April 4, 2014, while housed at

PJG

Lieber Correctional Institution, Defendant Sergeant Johnson, a correctional officer, escorted a nurse to Collins's cell in the Ashley-A unit for the afternoon medication distribution.  At that time, Johnson observed that the bunk beds in Collins's cell were not in the correct position and asked Collins and his roommate to "fix" the bunk beds.  According to Collins, he responded to Johnson's request by stating "[Y]ou should call maintenance if you want the bunk fixed."  (Compl., ECF No. 1 at 4) (alteration in original).  Johnson explains that the reason for the request was that the bunk beds were obstructing the view to the inside of the cell, and that additional security measures had been implemented in the Ashley-A unit directing that a cell door was not to be opened if personnel had an obstructed view inside the cell from the window in the cell door.  (Johnson Aff. ¶¶ 7-9, ECF No. 43-5 at 2.)  Collins alleges that Johnson returned some time later with two other correctional officers—Defendants Robinson and Simmons—for distribution of the evening meal.  When Johnson observed that the bunk beds had not been returned to the correct position, Collins alleges Johnson directed the other officers to not deliver food to Collins's cell.

According to the defendants, following the evening meal distribution, either Collins or his cellmate broke the window to their cell door by throwing a locker door from inside the cell.  (See, e.g., id. at ¶ 14.)  Collins alleges that Defendant Captain Sheppard was notified of the situation and came to his cell.  Collins informed Sheppard that he had been denied his medication and food and Sheppard requested that Collins move the bunk beds.  Collins admits he again refused to do so. Collins alleges that a short time later, Defendant Lt. McGhee came to his cell and gave a directive for Collins and his cellmate to come to the front of the cell to be handcuffed.  Collins alleges that "immediately after making the directive" McGhee administered a five-second burst of chemical munitions into the cell.  (Compl., ECF No. 1 at 6.)  According to Collins, McGhee returned



approximately ten minutes later and administered a second burst of chemical munitions into the cell. According to McGhee, he administered chemical munitions into Collins's cell on three separate occasions over an approximately thirty-minute period. (McGhee Aff. ¶ 19, ECF No. 43-4 at 3.) Also according to McGhee, each time he approached the cell, he gave Collins and his cellmate a directive to come to the door to be handcuffed prior to the administration of chemical munitions, and each time they refused to comply. (Id. ¶ 20.)

Collins alleges that, following the administration of chemical munitions, Defendant Major Nettles authorized a forced cell movement team be activated. The forced cell movement team, which was comprised of Defendants Simmons, Robinson, Lease, Johnson, Lyde, Hunter, Turbide, Thompson, Forde, and Williams, entered the cell and put Collins and his cellmate in restraints. Collins alleges that when the team entered he could not see, and the team hit him with the shield, pulled him off the bunk bed, and began to beat and choke him as they applied restraints. Collins alleges that he was then escorted to the Special Management Unit and was seen by a nurse. He alleges he was sent to the hospital, where he received further medical treatment for a laceration on his head and other cuts and abrasions. (See generally Compl., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible



evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

PJG

**B.    Defendants' Motion for Summary Judgment**

**1.    Eighth Amendment—Excessive Force**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  To proceed with his excessive force claim under the Eighth Amendment, Collins must demonstrate:  (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.  However, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322



(1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting. See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984). In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. Bailey, 736 F.2d at 969-70. The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. Id. Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the



circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969. Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

###### a.    Chemical Munitions

Collins alleges that Defendant McGhee used excessive force when he sprayed chemical munitions into Collins's cell multiple times. (See Compl., ECF No. 1 at 6.) Specifically, Collins argues in his Complaint that the amount of chemical munitions used was excessive.[1] In support of their motion for summary judgment, the defendants have provided incident reports, affidavit testimony from the defendants, deposition testimony from Collins, Collins's medical records, and Collins's disciplinary history.

Applying the Whitley factors to the facts viewed in the light most favorable to Collins, the court concludes that no reasonable jury could find that the force used was unconstitutionally excessive. Importantly, Collins acknowledges in his Complaint that he had failed to comply with previous directives regarding the position of his bunk beds, and that Defendant McGhee had given him a directive to come to the cell door to be handcuffed. (Compl., ECF No. 1 at 4, 6.) The defendants' affidavit testimony confirms Collin's disruptive behavior. (Johnson Aff. ¶¶ 10, 13, ECF No. 43-5 at 2; McGhee Aff. ¶¶ 17, 19, ECF No. 43-4 at 3.) The defendants further aver that

---

[1] Collins alleges that a total of 1136 grams of chemical munitions was deployed. However, the Use of Force Report indicates that three bursts were deployed that, when totaled, equal 1036 grams. (Use of Force Report, ECF No. 43-3 at 6.)



Collins's and his cellmate's continued noncompliance with numerous directives over the course of several hours—including the continued defiance of directives to be handcuffed—is a security threat to the staff and other inmates "as it redirects SCDC staff from normal duties and instigates further disruptive incidents among the Inmate population." (Nettles Aff. ¶ 4, ECF No. 43-2 at 4; McGhee Aff. ¶ 22, ECF No. 43-4 at 3.) As stated above, McGhee avers that, each time he approached the cell, he gave Collins and his cellmate a directive to come to the door to be handcuffed prior to the administration of chemical munitions, and each time they refused to comply. (McGhee Aff. ¶ 20, ECF No. 43-4 at 3.) McGhee further avers that the chemical munitions were "administered inside the cell in a fog" and that "none of the chemical munitions were administered directly at the person of [Collins] or his cellmate; however, I observed that [Collins] and his cellmate had wrapped towels around their faces to, presumably, combat the chemical munitions and to stay in the cell for a longer period of time." (Id. ¶ 21.) McGhee testifies that the administration of chemical munitions was for the purpose of restoring order and compelling compliance with the directives to leave the cell without further uses of force. (Id. ¶ 18.) Collins makes no mention of any injury he suffered as a result of McGhee's use of chemical munitions.

The undisputed evidence in the record shows, at the very least, that Collins's unruly behavior and noncompliance with repeated directives over the course of several hours necessitated the use of the mace. Bailey, 736 F.2d at 969-70. Additional evidence in the record, which Collins has not disputed, demonstrates that the behavior of Collins and his roommate posed a threat in that they destroyed SCDC property and broke the window to their cell door. Accordingly, even though Collins was confined in his cell, he nonetheless indisputably presented a threat to the order of Lieber Correctional Institution and the safety of those officers and inmates inside it, necessitating the use



of force.  See Whitley, 475 U.S. at 321; Brown v. Eagleton, Civil Action No. 4:14-cv-357-BHH, 2015 WL 5781504 (D.S.C. 2015) (rejecting the argument that "prison officials may not use mace or chemical munitions on disruptive prisoners who are locked in a cell and may only use write ups and the loss of privileges to secure compliance and maintain discipline").  Thus, even viewing the record in the light most favorable to Collins, no reasonable jury could find that the defendants' perception of Collins's recalcitrant behavior and the risk his behavior posed was unreasonable.  See id. at 321-22.

Collins specifically complains about the amount of chemical munitions deployed in alleging that the defendants used excessive force.  As stated above, the use of chemical munitions by prison officials is not a violation of a prisoner's constitutional rights when used appropriately.  See Williams, 77 F.3d at 763.  In examining the second factor under Whitley, the court observes that, though the total amount in this case is not small, the defendants have presented unrefuted evidence that Collins was given multiple opportunities to comply with the directive to come to the door of the cell to be handcuffed and that he refused to comply.  Additionally, the defendants have presented unrefuted evidence that the chemical munitions were dispersed generally and incrementally into the cell over a period of time and that Collins had taken measures to actively defend against the chemical munitions by wrapping towels around his face, which would necessitate a larger amount of chemical munitions be used in order to be effective.  Accordingly, under the circumstances presented here, the only reasonable inference is that multiple bursts of chemical munitions were rendered in repeated attempts to restore order and institutional security rather than maliciously or sadistically to cause harm.  See Whitley, 475 U.S. at 322; Bailey, 736 F.2d at 969-70.

Examining the extent of injury actually inflicted, the court observes that Collins was treated by medical personnel shortly after the incident.  Notably, none of the injuries about which Collins complains was proximately caused by the deployment of chemical munitions; rather, Collins alleges that the injuries he sustained were incurred during the forced cell extraction.  (Compl., ECF No. 1 at 9.)  Accordingly, applying both the <u>Whitley</u> and <u>Bailey</u> factors, the court concludes that no reasonable jury could find that the defendants' use of mace was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm.  <u>See</u> <u>Wilkins</u>, 559 U.S. at 37; <u>see also</u> <u>Whitley</u>, 475 U.S. at 321-22; <u>Bailey</u>, 736 F.2d at 969-70; <u>Williams</u>, 77 F.3d at 763.

### b.     Forced Cell Extraction

Collins alleges that the cell extraction team used excessive force against him when removing him from his cell.  (<u>See</u> Compl., ECF No. 1 at 6.)  Specifically, Collins alleges in his Complaint that the team beat and choked him as they were restraining him.  In support of their motion for summary judgment, the defendants have provided incident reports, affidavit testimony from the defendants, deposition testimony from Collins, Collins's medical records, and Collins's disciplinary history.

The defendants provide affidavit testimony from members of the extraction team, who aver that, following Collins's repeated refusal to come to the cell door to be handcuffed, they entered the cell to retrieve Collins.  (<u>See</u>, <u>e.g.</u>, Lyde Aff. ¶ 11, ECF No. 43-6 at 2; Lease Aff. ¶ 16, ECF No. 43-7 at 2; Robinson Aff. ¶ 20, ECF No. 43-8 at 3; Hunter Aff. ¶ 18, ECF No. 43-9 at 3.)  They aver that, soon after the door was opened, Collins's cellmate exited the cell.  (<u>See</u>, <u>e.g.</u>, Lyde Aff.  ¶ 12, ECF No. 43-6 at 2; Lease Aff. ¶ 17, ECF No. 43-7 at 2; Robinson Aff. ¶ 21, ECF No. 43-8 at 3; Hunter Aff. ¶ 17, ECF No. 43-9 at 3.)  They further aver that Collins violently resisted, but was eventually



subdued.  (See, e.g., Lyde Aff. ¶ 11, ECF No. 43-6 at 2; Lease Aff. ¶ 16, ECF No. 43-7 at 2; Robinson Aff. ¶ 20, ECF No. 43-8 at 3; Hunter Aff. ¶ 18, ECF No. 43-9 at 3.)  The members of the extraction team swear that they did not beat, kick, choke, or otherwise assault or use excessive force against Collins or witness any other member of the extraction team do so.  (See, e.g., Lyde Aff. ¶¶ 14-15, ECF No. 43-6 at 2; Lease Aff. ¶¶ 19-20, ECF No. 43-7 at 3; Robinson Aff. ¶¶ 23-24, ECF No. 43-8 at 3; Hunter Aff. ¶¶ 20-21, ECF No. 43-9 at 3.)   Additionally, video evidence of the cell extraction provided by the defendants does not appear to undermine or contradict the defendants' affidavit testimony.  (See ECF No. 43-15.)  Collins has not refuted the defendants' averments in this regard.

Collins's medical records demonstrate that Collins was evaluated immediately after his cell extraction by a nurse.  Shortly thereafter, Collins was transported to Trident Medical Center due to "lacerations to [the] head and hematomas to the orbital [right and left]."  (Med. Rec., ECF No. 43-14 at 27.)  Collins acknowledges that, at the medical center, he underwent a CT scan and received six staples on the crown of his head.  (Compl., ECF No. 1 at 9.)  After he returned to Lieber, the medical records demonstrate that Collins continued to receive follow-up medical treatment, including the eventual removal of his staples.  The defendants aver that Collins's injuries are consistent with an inmate violently resisting the efforts of SCDC officers during a forced cell extraction.  (Mauney Aff. ¶ 10, ECF No. 43-14 at 2; Nettles Aff. ¶ 35, ECF No. 43-2 at 5; Sheppard Aff. ¶ 32, ECF No. 43-3 at 5.)   Although Collins alleges in his Complaint that he experiences recurring headaches, the defendants have presented evidence from the head nurse at Lieber who testifies that Collins complained of and was treated for headaches years before the incident at issue in this lawsuit.  (See Mauney Aff. ¶ 13, ECF No. 43-14 at 2-3.)  Additionally, she avers that Collins experienced several

other incidents in which he hit his head, such as falling off of his bunk bed, and also had been counseled by SCDC medical staff regarding exceeding the recommended dosage of medication prescribed for headaches and informed that this abuse can cause additional headaches. (Id. ¶¶ 14-17, ECF No. 43-14 at 3.)

      Again applying the Whitley factors to the version of events presented by Collins, the court concludes that the defendants are entitled to summary judgment on this claim. Indisputably, the need for force was great in light of Collins's admitted refusals of the guards' directives over a period of multiple hours. As testified to by the defendants, Collins's and his cellmate's continued noncompliance with numerous directives over the course of several hours—including the continued defiance of directives to be handcuffed—is a security threat to the staff and other inmates "as it redirects SCDC staff from normal duties and instigates further disruptive incidents among the Inmate population." (Nettles Aff. ¶ 4, ECF No. 43-2 at 4; McGhee Aff. ¶ 22, ECF No. 43-4 at 3.) Additionally, the extent of the threat to the safety of the guards during the cell extraction was high, both in light of Collins's contemporaneous behavior and his past history of violence and recalcitrance. (See Collins's Disciplinary History, ECF No. 43-2 at 7-10.) The law views the need for force through the lens of the guards as long as their perceptions are reasonable, see Whitley, 475 U.S. at 321-22, and the undisputed testimony in this case indicates that Collins was violently resisting. Moreover, the unrefuted evidence shows that the defendants began their use of force with a burst of chemical munitions rather than a flesh-to-flesh confrontation, then graduated the force employed to an extraction team in light of Collins's lack of compliance, demonstrating the defendants' efforts to temper the severity of the force applied. Finally, medical records regarding the extent of the actual injury inflicted suggest that the force applied was not disproportionate to the



circumstances and belie Collins's claims of a gratuitous beating. Examining the totality of the undisputed circumstances, the court concludes that no reasonable jury could find that the defendants' use of physical force to extract Collins from his cell was not commensurate with the reasonably perceived threat posed by Collins, or was done wantonly to inflict pain and was not applied in a good faith effort to restore order.

### 2.    Other Claims

To the extent Collins alleges the defendants were deliberately indifferent to his needs by denying him medication and food, as discussed above, the defendants have showed through unrefuted evidence that the bunk beds were obstructing the view to the inside of the cell, and that additional security measures had been implemented in the Ashley-A unit directing that a cell door was not to be opened if personnel had an obstructed view inside the cell from the window in the cell door. (Johnson Aff. ¶¶ 7-9, ECF No. 43-5 at 2.) The defendants have provided evidence that shows that Collins was given multiple opportunities rectify the situation by complying with their requests to move the bunk beds back to their original positions, but that he refused to do so. (Id. ¶¶ 9, 12, 13, ECF No. 43-5 at 2-3.) Additionally, to the extent Collins alleges that a clinical counselor should have been notified prior to the defendants' use of force, the defendants present testimony that SCDC Policy does not require such a consultation. (Nettles Aff. ¶ 27, ECF No. 43-2 at 4.) To the extent Collins attempts to assert any other claims not specifically addressed above, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009). Finally, to the extent Collins alleges state law claims, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c)(3); see also Tigrett v. Rector and Visitors of the Univ.

of Va., 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case).

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion for summary judgment should be granted.  (ECF No. 43.)

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 27, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).